

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00213-CR
_____

JEFFERY STEVEN HARDY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 32,426-A

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Jeffery Steven Hardy appeals an order which purported to rescind a previous order terminating certain obligations placed on Hardy after his having been placed on community service for a sexual offense.

After having been indicted on a charge of aggravated sexual assault of a child, in April 2005, Hardy entered into a plea agreement whereby he entered a plea of guilty to a charge of indecency with a child; as part of that plea agreement, he was placed on deferred adjudication community supervision for seven years.[1] Hardy was required to register as a sex offender. *See* TEX. CODE CRIM. PROC. ANN. art. 62.001–.408 (Vernon 2006 & Supp. 2008).

About a year after having been placed on community supervision, Hardy was subjected to carbon monoxide poisoning, and, as a result, suffered at least some degree of brain damage.

Eventually, in April 2008, Hardy filed a motion asking that he be discharged from both his community supervision and his obligation to maintain registration as a sex offender. At the hearing on that motion, Rex Fennell (the community supervision officer charged with Hardy's supervision), said he did not oppose the early release. Fennell said he was under the impression that Hardy was so debilitated by his brain damage that he was unable to sign his own name and that he even required assistance in walking. Fennell further related that Mrs. Hardy had represented to him that she was

---

[1]Although the parties and the trial court consistently use the term "probation," in the interest of precision and clarity, we will discuss this case in the terms used by the Texas Code of Criminal Procedure.

2

contemplating divorcing Hardy and placing him in a nursing home, but Hardy's sex-offender registration requirement prohibited her from making such a placement. Fennell went on to say that he reviewed and considered a psychologist's evaluation of Hardy, which had been performed at Mrs. Hardy's instance (an evaluation which incorporated an evaluation done by a neuropsychologist two years earlier); both of these evaluations were entered into evidence. The State did not seem to vigorously oppose Hardy's motion at the hearing. However, when the trial court inquired of the State's position regarding Hardy's request, one prosecutor responded that he believed that there was no provision in the Texas Code of Criminal Procedure for the requested relief and that it may, in fact, be specifically barred. The State then said that at least one of the prosecutors present in the courtroom read the statutes as indicating Hardy was "not only not entitled on the set-aside for the probation itself, which is contained within the Code, but he would not be entitled to a set-aside on the registration requirement." After Hardy's attorney voiced his disagreement with that viewpoint, the trial court called the parties to the bench and an off-the-record discussion among the trial court and the attorneys took place. Once again on the record, the trial court then announced he was granting Hardy's motions for early termination of "probation" and sex-offender registration.

The trial court then entered two separate orders. In the first order, the trial court granted Hardy's motion and "terminated" Hardy's "probationary period" and "discharged [him] from probation." The other order entered that day read in part: "Defendant's requirement to Register as a Sex Offender under Chapter 62 of the Code of Criminal Procedure [is] declared to have terminated

3

and the Defendant discharged from that Obligation pursuant to the Court's authority under Articles 62.404 and 62.407 of the Texas Code of Criminal Procedure."

In August 2008, the State filed a motion to reconsider, asking the trial court to rescind or set aside both of the orders which had been entered as a result of the April hearing. At a hearing on this motion, the State presented two faculty members from the school attended by Hardy's son. These witnesses testified that although they had encountered Hardy several times during a period of time of about a year before the hearing and had several interactions with him, neither had detected any indication that he suffered any degree of brain damage. The State also presented testimony from Fennell (who had testified at that April hearing that he did not oppose the early discharge), who gave testimony which would tend to leave the impression that Hardy had been attempting to avoid service of the notice of the hearing to reconsider his release from the supervisory and registration obligations and at the very least that he had been able to be alone outdoors without supervision. After hearing this evidence, the trial court stated it felt "taken advantage of . . . duped . . . [and] defrauded." The trial court then announced that it "set aside" its ruling from April and "reinstate[d] the probation, and require[d] [Hardy] to register as a sex offender." The trial court later entered an order dated October 1, 2008, in conformity with the oral pronouncement.

**Appellate Point of Error**

Hardy raises one point of error, alleging error in the trial court having granted the State's motion to reconsider its previous action of removing Hardy from community supervision and

4

releasing him from the obligation to register as a sex offender. His brief generally asserts that the trial court lacked jurisdiction and authority to issue the order reinstating Hardy on community supervision. Hardy refers to Article 44.01[2] of the Texas Code of Criminal Procedure and claims that timely appeal of the original (April 2008) orders was the State's sole remedy and that it could not, after the expiration of some five months, move for reconsideration of the orders in question. Hardy does not expand on these assertions and cites only two cases in his brief (one of which generally pertains to the distinction between Article 42.12, Sections 5 and 20[3] of the Texas Code of Criminal Procedure and the other relates to the finality of a trial court's order dismissing an indictment incident to the termination of a deferred adjudication[4]).

In order to examine the status of the trial court's October order reinstating Hardy on community supervision, we must examine the effect of the April orders. Although there is a paucity of substantive or persuasive analysis in the brief provided by the State,[5] its brief does somewhat

---

[2]TEX. CODE CRIM. PROC. ANN. art. 44.01 (Vernon Supp. 2008).

[3]*State v. Juvrud*, 96 S.W.3d 550 (Tex. App.—El Paso 2002), *aff'd*, 187 S.W.3d 492 (Tex. Crim. App. 2006); *see* TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 5, 20 (Vernon Supp. 2008).

[4]*Irving v. State*, 879 S.W.2d 220 (Tex. App.—Houston [14th Dist.] 1994), *aff'd*, 922 S.W.2d 959 (Tex. Crim. App. 1996).

[5]The State offers several arguments on appeal. It alleges, for example, that the trial court's order terminating supervision was merely a modification of the terms of supervision and that the fraud perpetrated upon the State and the trial court was so great that it precluded timely appeal by the State. We do not find much merit to these arguments, which are truly not relevant to the issue at hand.

5

tangentially mention what we find to be the critical issue in this case: whether the trial court was authorized to issue the April order discharging him from community supervision,[6] and it does say that the April orders were "prohibited by statute" and "contrary to statute." Upon conducting our own research and review of the record, we have concluded that resolution of the issues relates to this position.

**Early Discharge from Deferred Adjudication Not Permitted**

The trial court was specifically precluded from granting Hardy early discharge from community supervision.

Deferred adjudication is a specific form of community supervision and contains the following procedure:

> The judge may dismiss the proceedings and discharge a defendant, *other than a defendant charged with an offense requiring the defendant to register as a sex offender under Chapter 62*, as added by Chapter 668, Acts of the 75th Legislature, Regular Session, 1997, prior to the expiration of the term of community supervision if in the judge's opinion the best interest of society and the defendant will be served. The judge may not dismiss the proceedings and discharge a defendant charged with an offense requiring the defendant to register under Chapter 62, as added by Chapter 668, Acts of the 75th Legislature, Regular Session, 1997.

---

[6]The trial court issued two orders in April, one addressing community supervision and one addressing the sex-offender registration. The written October order, though, only speaks to community supervision (however, the spoken order said both). We limit our discussion to the community supervision order. As will be seen, the validity of that order will be dispositive. If the trial court could properly "reinstate" Hardy's community supervision, it could certainly issue terms and conditions that Hardy register as a sex offender.

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(c) (Vernon Supp. 2008) (emphasis added); *Arreola v. State*, 207 S.W.3d 387, 392 (Tex. App.—Houston [1st Dist.] 2006, no pet.).[7] The cogent question to be answered deals with whether the trial court was either without the jurisdiction or was without authority to discharge Hardy from deferred adjudication before his seven-year term had been satisfied. The importance of this question is this: it determines whether the State was in a position to request that the trial court reconsider and effectively set aside its April order.[8]

In regard to attacks on orders which have been entered, there is a vast difference between orders which are void and those which are simply voidable. Although void orders or judgments may be collaterally attacked at any time,[9] an order or judgment which is voidable may only be attacked in a direct appeal.[10]

---

[7]"[D]eferred adjudication community supervision for a sex-offender-registration offense [such as indecency with a child] cannot be terminated early." *Citing* TEX. CODE CRIM. PROC. ANN. art. 62.101(a)(1) (Vernon Supp. 2005), art. 42.12, § 5(c) (Vernon Supp. 2005) (no change has been made to the two cited articles since *Arreola*).

[8]The State filed no appeal from the trial court's April orders releasing Hardy from his deferred adjudication and sex-offender registration obligations. If both of those orders were valid, the trial court lost jurisdiction over Hardy well before the State's motion for reconsideration, filed about four months after the April orders.

[9]*Dinnery v. State*, 592 S.W.2d 343, 351 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g).

[10]*Ex parte Shields*, 550 S.W.2d 670, 675–76 (Tex. Crim. App. 1976) (op. on reh'g).

**The Texas Court of Criminal Appeals in *Seidel***

We have determined that a statute makes specific prohibition of the kind of order terminating Hardy's community supervision. Considering this statutory constraint, it must be determined whether a violation of that statute would be an order which was outside the jurisdiction of the court or whether such a violation would have been made without authority. "A trial court may have jurisdiction to act over a case, yet lack authority to act in a particular manner over that case. Lack of *jurisdiction* over a case renders the judgment void, and it may always be collaterally attacked." *Ex parte Seidel*, 39 S.W.3d 221, 224 (Tex. Crim. App. 2001) (citations omitted). By way of explanation of this underlying case, Seidel had been arrested for felony driving while intoxicated, but the State never indicted him or filed an information. Four months after his arrest, Seidel filed an application for habeas corpus relief; citing Article 32.01 of the Texas Code of Criminal Procedure,[11] he asked that the prosecution and bail be discharged. The trial court granted Seidel's motion "with prejudice." *Id.* at 222. The Texas Court of Criminal Appeals held that where no statutory or constitutional provision existed vesting the trial court with authority to dismiss a case with prejudice when the State did not consent to a dismissal with prejudice, the trial court possessed

---

[11]"When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant on or before the last day of the next term of the court which is held after his commitment or admission to bail or on or before the 180th day after the date of commitment or admission to bail, whichever date is later." TEX. CODE CRIM. PROC. ANN. art. 32.01 (Vernon 2006). The 2000 statute had no substantive differences.

8

no inherent power to dismiss the prosecution with prejudice; therefore, the portion of the judgment dismissing the case with prejudice was "void" and subject to direct or collateral attack by the State at any time. *Id*. at 225. *Seidel* discusses the difference between void and voidable judgments using the characteristics of "illegal" or "irregular" acts.[12] Specifically, the Texas Court of Criminal Appeals held that the district court's dismissal of the prosecution "with prejudice" was "beyond the scope of its proper *authority*," hence "that part of the judgment was void." *Id.* (emphasis added).[13]

---

[12]"Unauthorized acts (or errors) can be characterized as either 'illegal' or 'irregular.' . . . 'Illegal acts' are defined as 'acts that are not authorized by law.' . . . On the other hand, 'irregular acts' are defined as 'acts or practices that vary from the normal conduct of an action.' . . . While a judgment is merely 'voidable for irregularity,' it is 'void for illegality.'" *Seidel*, 39 S.W.3d at 224 (citations omitted).

[13]Curiously, on one occasion not quite a year after *Seidel*'s release, the Texas Court of Criminal Appeals cited that case as follows:

> In recent years, this Court has attempted to refine the definition of a "void" vs. "voidable" conviction because those terms have caused so much confusion in Texas criminal law. "Void" convictions should be defined as those in which the trial court lacked jurisdiction over the person or subject matter or in which the trial judge lacked qualification to act in any manner. *See, e.g.*, *Ex parte Seidel*, 39 S.W.3d 221, 226–27 (Tex. Crim. App. 2001) (Womack, J., dissenting, joined by Keller, P.J. & Meyers, J.).

*Ex parte McCain*, 67 S.W.3d 204, 209 (Tex. Crim. App. 2002). No explanation is given for why the court cited to *Seidel*'s dissent. That section of Judge Womack's dissent, and all of *McCain*, center on what erroneous orders of trial courts are cognizable on habeas review. Although the cited portion of Judge Womack's dissent could be characterized as mocking the *Seidel* majority's distinctions between illegal and irregular judgments, nothing in *McCain* or any subsequent Texas Court of Criminal Appeals case we have found calls into question the *Seidel* reasoning and analysis on an order that amounts to an unauthorized, illegal (as opposed to unauthorized, irregular) act of a trial court. *See Seidel*, 39 S.W.3d at 224.

9

Hardy's case bears similarity to the circumstances in *Seidel*. Here, the applicable statute clearly forbade the trial court from granting Hardy an early discharge from deferred adjudication. In *Seidel*, the Texas Court of Criminal Appeals pointed out that despite his granted relief pursuant to Article 32.01 of the Texas Code of Criminal Procedure, under Article 28.061, he could still subject Seidel to subsequent prosecution. *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art 28.061 (Vernon 2006). The court reflected on its analysis in *Davis v. State*,[14] wherein it had concluded that, "This is not to say that judicial functions performed by one without any authority to act may not be void." *Davis*, 956 S.W.2d at 559. Therefore, the trial court (which had jurisdiction over Seidel and over the offense) nonetheless was outside its authority in attempting to attach prejudice to the charged offense. "In this case, the trial judge's dismissal 'with prejudice' was more than a variance from the normal conduct; that action was outside the parameters of any rule or procedure in place at that time.

---

[14]956 S.W.2d 555 (Tex. Crim. App. 1997). Pursuant to plea bargain, Davis was placed on probation; the plea was to a magistrate, to whom Davis's case had been referred by the trial court. After revocation and sentencing, Davis claimed the order placing him on probation was void because the trial court order referring the matter to the magistrate was signed two days after the plea was actually taken; Davis thus reasoned the magistrate was without jurisdiction to accept the plea. The Texas Court of Criminal Appeals pointed out that the magistrate was merely a surrogate for the trial court, which was never divested of jurisdiction. The court highlighted situations in which the trial court lacked constitutional or statutory qualifications, and actions taken without such qualifications rendered those acts void. The court contrasted those situations with ones where the trial court had acted in violation of a statutory procedure, such as noticing the defendant of a hearing to appoint a special judge; such a situation presented a voidable, not void conviction. *Id.* at 559. Hence, the only error in Davis's case involved the "process by which the district judge referred this case to its surrogate [the magistrate]," which had no effect on the trial court's jurisdiction. *Id.* at 560. The "error was not jurisdictional and the conviction [was] not void." *Id.*

We conclude that the trial judge's action was more than a mere violation of statutory procedure. The trial judge's action was not authorized by law and was, therefore, void." *Seidel*, 39 S.W.3d at 225.[15]

We recognize, as did one of our sister courts, some apparent inconsistencies in this area in the holdings of the Texas Court of Criminal Appeals.[16]

---

[15]*See also Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) (finding Mizell's sentence illegal because it fell outside statutory permissible range of punishment); *Green v. State*, 906 S.W.2d 937, 939–40 (Tex. Crim. App. 1995) (trial court entered findings of fact and conclusions of law 11½ months after the record had been filed with the appellate court; such findings and conclusions were "null and void"). We also find instructive some intermediate appellate court decisions, where trial court acts outside statutory time restrictions were held to be void: *Moore v. State*, No. 09-06-532-CR, 2008 Tex. App. LEXIS 3174, at \*\*2–3 (Tex. App.—Beaumont Apr. 30, 2008, no pet.) (mem. op., not designated for publication) (trial court sua sponte order, entered two years after discharging Moore from deferred adjudication, returning Moore to deferred adjudication, held void where applicable statute did not preclude discharge); *Neugebauer v. State*, 266 S.W.3d 137, 139 (Tex. App.—Amarillo 2008, no pet.); *Hopkins v. State*, No. 05-03-01683-CR, 2004 Tex. App. LEXIS 8794 (Tex. App.—Dallas Sept. 30, 2004, no pet.) (not designated for publication) (trial court's issuance of a judgment nunc pro tunc, about a month before appellate court's mandate issued, held void: trial court had no jurisdiction); *Deifik v. State*, 58 S.W.3d 794, 795–96 (Tex. App.—Fort Worth 2001, pet. ref'd) (trial court cannot put defendant on shock probation outside the 180 days after defendant begins serving sentence).

[16]In *Wiley v. State*, it was pointed out that:

In *Williams*, the trial court placed the defendant on community supervision even though he was statutorily ineligible for it due to a deadly weapon finding in the judgment. *Ex parte Williams*, 65 S.W.3d 656, 656–58 (Tex. Crim. App. 2001). The court of criminal appeals, in deciding *Williams* approximately seven months after *Seidel*, held that although no statutory or constitutional provision exists vesting the trial court with authority to place Williams on probation, the prosecutor did not consent to probation, and the trial court possesses no inherent power to place Williams on probation, nonetheless, the order or portion of the judgment placing Williams on probation was not "void" because "illegal sentences and unauthorized probation orders are two different things." *Williams*, 65 S.W.3d at 657–58; *see also Williams*, 65 S.W.3d at 661–64 (Womack, J., concurring) (questioning why

11

We find the situation before us analogous to that in *Seidel*. The trial court's action here, granting early discharge to Hardy, was "more than a variance from the normal conduct" of administering a defendant on deferred adjudication: the act was specifically precluded by the same statute which authorized the grant of deferred adjudication. *Seidel*, 39 S.W.3d at 225. The order of

---

Williams's probation order was not void under *Seidel*). The court explained that "community supervision is not a sentence or even a part of a sentence" and concluded that the illegal granting of community supervision should not be governed by a rule which applies to illegal sentences. *Williams*, 65 S.W.3d at 657 (citing *Speth v. State*, 6 S.W.3d 530, 532 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1088, 120 S. Ct. 1720, 146 L. Ed. 2d 642 (2000)).

While we agree with Wiley that the distinction between the void portion of the judgment in *Seidel* and the not void order in *Williams* seems incongruent, we also agree with the State that as an intermediate appellate court we are bound to follow the pronouncements of the court of criminal appeals. *See Taulung v. State*, 979 S.W.2d 854, 857 (Tex. App.—Waco 1998, no pet.). The court of criminal appeals has unequivocally held that a trial court's order granting probation, even to a statutorily ineligible defendant, is not a "sentence" and therefore cannot be an illegal or void sentence. *Williams*, 65 S.W.3d at 657–58; *see also State v. Enriquez*, 47 S.W.3d 177, 179 (Tex. App.—El Paso 2001, no pet.) (following *Williams* to hold that, because probation is not illegal or void sentence, State cannot complain for first time on appeal that probation was unauthorized); *State v. Ramirez*, 62 S.W.3d 356, 358 (Tex. App.—Corpus Christi 2001, no pet.) (following *Williams* to hold that, because probation is not illegal or void sentence, appellate court lacked jurisdiction to hear State's appeal of shock probation order). Applying *Williams*, as we must, it is clear that the probation order entered in Wiley's prior felony case for sexual assault of a child did not constitute a void or illegal sentence. *See Williams*, 65 S.W.3d at 657–58. Accordingly, Wiley's conviction in that case is not void. We hold that the court did not err by permitting the State to use Wiley's prior conviction for sexual assault of a child to upgrade the instant offense to a felony. We overrule Wiley's point.

112 S.W.3d 173, 175–76 (Tex. App.—Fort Worth 2003, pet. ref'd).

12

April 2008 discharging Hardy from deferred adjudication "was outside the parameters of any rule or procedure in place" and was, therefore, void.[17] *Id.*

Because the trial court's order of April was void, it was null and had no effect. Due to the void nature of the order by which an attempt was made to release Hardy from deferred adjudication, it was never a valid order. Therefore, it cannot be said the trial court erred in "reinstating" Hardy on "probation."

Therefore, the April orders' effort to relieve Hardy from the obligations of community supervision and from reporting as a sex offender failed entirely, and those obligations remain in full force and effect. Further, because the April orders are void, the later order rescinding the April order is—as it was drafted—of no consequence. Hardy's appeal of the later order of rescission must fail.

---

[17]"[A void judgment] is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." *Ex parte Spaulding*, 687 S.W.2d 741, 745 (Tex. Crim. App. 1985) (Teague, J., dissenting). Because the orders of rescission are void, Hardy remains under the constraints of community supervision.

We overrule Hardy's point of error and hold that the original order placing Hardy on community supervision is in full force and effect, unaffected by neither of the April orders nor by the later order of rescission.

Accordingly, we modify the trial court's order of October 1, 2008, to conform to the holdings of this opinion.

Bailey C. Moseley
Justice

Date Submitted:        August 5, 2009
Date Decided:          September 23, 2009

Publish

14